**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| THOMAS SIMMS, | : | |
| | : | Civil Action No. 10-6084 (MLC) |
| Petitioner, | : | |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| GREG BARTKOWSKI, et al., | : | |
| | : | |
| Respondents. | : | |

**COOPER, District Judge**

Petitioner, Thomas Simms, seeks a writ of habeas corpus under 28 U.S.C. § 2254.  Petitioner also moved to have this proceeding stayed while he exhausts his state court remedies, pursuant to 28 U.S.C. § 2254(c).  For the reasons stated below, this Court will deny Petitioner's motion for a stay.

**I.    PROCEDURAL BACKGROUND**

Petitioner was indicted on March 21, 2001 by a Monmouth County Grand Jury which charged Petitioner with four counts of attempted murder; four counts of aggravated assault; four counts of aggravated assault with a deadly weapon; four counts of aggravated assault, pointing a firearm; possession of a weapon for an unlawful purpose; unlawful possession of a weapon; acquiring a handgun without a permit to purchase; evidence tampering; hindering apprehension; and conspiracy to commit murder.  (Resp.'s Br., Ex. 14, Da1-13.)

On May 7 through May 23, 2002, Petitioner and his co-defendant, Michael Simms, were tried jointly in New Jersey

Superior Court before the Honorable Ira E. Kreizman, J.S.C. and a jury.  (Id. at Ex. 1-12.)  On May 23, 2002, the jury found Petitioner guilty of two counts of attempted murder (Counts One and Three), two counts of attempted passion/provocation manslaughter (as lesser offenses of Counts Two and Four), and all of the remaining charges in the indictment except for acquiring a handgun without a permit to purchase and conspiracy to commit murder.  (Id. at Ex. 14, Da14-27.)  The jury also found that Petitioner had committed a "violent crime" by using a deadly weapon or causing serious bodily injury in the commission of the crimes charged in Counts One through Eight of the indictment. (Id. at Ex. 14, Da20.)

Petitioner moved for a new trial arguing that: (1) the charge as to attempted passion/provocation manslaughter was incomplete because it did not include instructions on "course of ill treatment" (State v. Guido, 191 A.2d 45 (N.J. 1963)) or "mutual combat" (State v. Crisantos, 508 A.2d 167, 172 (N.J. 1986)); and (2) the verdict was inconsistent.  (Id. at Ex. 13 (10-11 to 16-19).)

On September 27, 2002, Judge Kreizman denied Petitioner's motion for a new trial and imposed his sentence.  (Resp.'s Br., Ex. 13 (28-6 to 41-2).)  Petitioner received an aggregate sentence of forty years of imprisonment subject to an 85% parole disqualifier.  (Id. at Ex.13 (65-15 to 76-13); Id. at Ex. 14, Da28-30.)

On or about December 9, 2002, a Notice of Appeal was filed on Petitioner's behalf.  (Id. at Ex. 14, Da31.)  Petitioner's appellate counsel raised the following points in his brief:

(1) Because the instructions given to the jury were confusing and because the charges relating to the shooting were presented sequentially on the verdict sheet, the jurors were perforce directed to consider passion/provocation manslaughter only if they found the Defendant not guilty of murder, in violation of State v. Coyle;

(2) the trial judge's refusal to instruct the jurors that a continuing course of ill treatment could provide the basis for a verdict of passion/provocation manslaughter deprived Defendant of the right to due process of law and a fair trial.  U.S. CONST. AMENDS. VI, XIV; N.J. CONST. (1947) ART. I, PARAS 1, 9, 10.;

(3) the conviction under Count Seventeen for possession of a weapon for an unlawful purpose should have been merged into the conviction for attempted passion/provocation manslaughter under either Counts One or Three;

(4) the trial court violated Defendant's federal constitutional right to due process and his right to a jury trial when it sentenced him to consecutive terms and to terms greater than the presumptive term based upon facts neither admitted by Defendant nor found by the jury.

(Id. at Ex. 14, 17.)

Petitioner also filed a pro se brief appellate brief, alleging the following:

(1) the instructions given to the jury were so confusing and misleading as to cause reversible error;

(2) a significant physical confrontation and/or a continuing course of ill-treatment could constitute adequate provocation for the shootings of Parrish and Amin Suluki;

(3) the sentencing court failed to be guided by general provisions when determining whether to impose a concurrent or consecutive sentence, and the code's

3

paramount sentencing goals that punishment fit the
crime, not criminal, and that there be a predictable
degree of uniformity in sentencing while sentencing
defendant.

(Id. at Ex.16.)

On February 18, 2005, the New Jersey Appellate Division
affirmed Petitioner's convictions and the imposition of
consecutive terms on the attempted murder convictions, but
vacated Petitioner's sentences and remanded for re-sentencing in
accordance with Blakely v. Washington, 542 U.S. 296 (2004), as
interpreted and applied in State v. Natale, 861 A.2d 148 (N.J.
App. Div. 2004), aff'd in part & rev'd in part, 878 A.2d 724
(N.J. 2005). On February 28, 2005, the State filed a Notice of
Petition for Certification to the New Jersey Supreme Court,
seeking review of the portion of the Appellate Division's holding
vacating Petitioner's sentences and remanded for re-sentencing.
(Id. at Ex. 20.) On March 11, 2005, Petitioner's counsel filed a
letter in opposition to the State's petition for certification
and a Notice of Cross-Petition for Certification and a letter
cross-petition in support thereof. (Id. at Ex. 21, 22.) On March
17, 2005, the State filed a brief in support of its petition for
certification and a letter in opposition to Petitioner's
cross-petition for certification. (Id. at Ex. 24-25.)

On September 23, 2005, the New Jersey Supreme Court granted
the State's petition for certification, but summarily remanded
the matter to the trial court for re-sentencing in accordance

with <u>State v. Natale</u>, 878 A.2d 724 (N.J. 2005). (<u>Id.</u> at  Ex. 34.) Also on that same day, the New Jersey Supreme Court denied Petitioner's cross-petition for certification. (<u>Id.</u>)

On November 29, 2005, pursuant to <u>Natale</u>, Judge Kreizman re-sentenced Petitioner and imposed the original sentence. (<u>Id.</u> at Ex. 27 (18-1 to 20-18); Ex. 34, Da70-72.)  Petitioner appealed and on February 6, 2007, the Appellate Division's Excessive Sentencing Panel affirmed Petitioner's sentence. (<u>Id.</u> at Ex.29 (72-21 to 73-2).  On April 20, 2007, Petitioner filed a pro se petition for post-conviction relief ("PCR") alleging that:

> (1) Petitioner's federal and state 6th Amendment constitutional right to due process was violated, and thus deprived defendant of a fair trial;
>
> (2) Trial counsel deprived defendant of his federal and state constitutional right to effective assistance of counsel;
>
> (3) The ineffective assistance of appellate counsel deprived defendant of his federal and state constitutional right to effective assistance of counsel; and
>
> (4) The defendant's excessive sentence is cruel and unusual in violation of his Eighth Amendment rights.

(<u>Id.</u> at Ex. 34.)

Petitioner was subsequently appointed counsel to represent him in the PCR proceedings, and, on August 19, 2008, counsel filed a brief in support of Petitioner's PCR petition arguing:

> (1) Defendant was denied the effective assistance of trial counsel in that counsel failed to adequately prepare for trial;
> (2) Defendant was denied effective assistance of appellate counsel;

5

> (3) The accumulation of errors made by defense counsel
> and trial judge so prejudiced the defendant as to
> undermine the right to receive a fair trial by jury;
> (4) Unjust elements used in constructing the
> defendant's sentence resulted in the trial court
> abusing it's [sic] sentencing discretion requiring a
> reversal of the defendant's sentencing phase due to an
> illegal sentence.

(Id. at Ex. 31.)  On October 10, 2007, the State filed a brief in opposition to Petitioner's PCR application.

On November 13, 2008, Judge Kreizman denied Petitioner's PCR petition. (Id. at Ex. 33.) On April 22, 2009, Petitioner filed a Notice of Appeal.  Appellate counsel filed a brief in support of Petitioner's appeal from the trial court's denial of PCR, alleging that "Defendant's attempted murder convictions must be reversed due to ineffectiveness of counsel and this matter must be remanded for an evidentiary hearing because a prima facie case of ineffectiveness of counsel was established."  (Id. at Ex. 34, pp. 30-51.)  Petitioner also filed a pro se supplemental brief in support of his appeal, again arguing that the jury instructions on attempted murder and attempted passion/provocation manslaughter were erroneous.  (Id. at Ex. 35.)  On May 14, 2010, the Appellate Division affirmed the order denying PCR for substantially the reasons expressed by Judge Kreizman in his November 13, 2008 opinion. (Petition for Writ of Habeas Corpus, Ex. A, 3-7.)  On October 7, 2010, the New Jersey Supreme Court denied Petitioner's petition for certification.

On or about November 22, 2010, Petitioner filed a petition for a writ of habeas corpus here, raising these claims:

Ground One: Confusing jury instructions, sequential verdict sheet, on charges of passion, forced jury to consider passion only after finding defendant not guilty of attempted murder in violation of defendant's Fourteenth Amendment, Due Process and Fair Trial Right's [sic].

Ground Two: Trial court refused to charge continuing course of ill treatment [sic] in passion/provocation instruction, depriving defendant of Due Process and Fair Trial Rights.

Ground Three: Confusing and misleading jury instructions, in violation of defendant's Rights to Fair Trial and Due Process

Ground Four: Sentencing court was not guided by general provisions while imposing consecutive sentence, and punishment does not fit the crime

Ground Five: The trial court erred in failing to precisely identify what help was needed regarding question from the jury during deliberations, consequently furnishing an inappropriate response that did not deliver the guidance needed. Counsel was ineffective for failing to object to same.

Ground Six: Sentencing court abused its discretion in consecutive sentence, undermining the mitigating facts found by the jury, in violation of defendant's Constitutional Right to a Trial by Jury.

Ground Seven: Defendant was prejudiced by accumulation of  errors collectively impacting jury deliberations and the outcome of trial, impeding on defendant's Rights to Due Process and Trial by Jury.

Ground Eight: Denial of effective assistance of appellate counsel, in violation of defendant's Constitutional Right to Counsel.

Ground Nine: Verdict pattern produced by jury proves the jury adhered to erroneous instructions while deliberating primary offenses, in violation of defendant's Rights to Trial by Jury and Due Process.

In his petition, Petitioner alleges that the claim raised in Ground Nine of his habeas petition is unexhausted.  On November

7

22, 2010, Petitioner moved to stay his habeas petition and hold it in abeyance so that he could return to state court to exhaust the allegedly unexhausted claim in Ground Nine.  In the motion, Petitioner alleges that "[e]vidence proving jury was guided by erroneous instructions in their deliberations was omitted in claim raised on direct appeal."  Petitioner argues that appellate counsel is at fault for failing to recognize or discover the value of the jury's verdict pattern, which Petitioner claims "could not have been the result of adherence to the curative instruction, upon which the Appellate Division relied to deny relief."  Petitioner further alleged that he had good cause for failing to exhaust this claim in state court because, due to his "capacity as a layman," he "was unable to professionally decipher the information existing in the verdict" until August 27, 2010.

On February 2, 2011, Petitioner filed a second petition for PCR in New Jersey Superior Court, arguing:

> (1) Appellate counsel's performance on direct appeal was deficient due to failure to include evidence of deliberating process jury followed in erroneous instruction issue, and failure to preserve other meritorious issues suitable for direct appeal for habeas review, in violation of Defendant's constitutional right to counsel;

> (A) Verdict pattern produced by jury proves jury adhered to erroneous instruction while deliberating primary offenses, in violation of defendant's Rights to Trial by Jury and Due Process;

> (B) Appellate counsel's failure to raise ineffective assistance of trial counsel issue, hinders appellate relief and prevents Federal review;

8

(C) Appellate counsel failed to raise meritorial [sic] issue that consecutive terms of attempted murder impedes on findings of the jury;

(D) Appellate counsel failed to raise meritorial [sic] issue that isolated jury deliberations of multiple counts of passion precluded consideration of evidence connecting all victims to provocation, absent specific instructions.

(Resp.'s Br., Ex. 37, 38; Petitioner's Motion for Stay, Attachment # 1, pp. 6-14.)

This Court issued a notice to Petitioner on February 18, 2011, pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), advising Petitioner that he may either: (1) "have [his] ending § 2254 Petition ruled upon as filed; or (2) [w]ithdraw [his] pending § 2254 Petition and file one all-inclusive § 2254 Petition subject to the one-year statute of limitations." Also on that date, this Court entered an Order directing respondents to submit a response to Petitioner's motion for a stay within 45 days. On March 1, 2011, Petitioner filed a request for a 90-day extension of time in which to make a decision regarding his options under the Mason Order. On March 15, 2011, Petitioner submitted a response to the Mason Order, stating that he chooses to withdraw his pending § 2254 Petition and file one all-inclusive § 2254 Petition subject to the one-year statute of limitations but that choice is expressly contingent on the denial of his request for the extension and if the Court denies Petitioner's request for a stay. (Docket Entry No. 8.) Petitioner further stated that "in the event of an extension and/or granting of the motion to stay,

9

[his] decision to withdraw pending § 2254 Petition shall become null and void." On April 4, 2011, Respondents filed their response to the motion to stay.

## II. FACTUAL BACKGROUND

The facts of this case were recounted in state court. This Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will reproduce the factual recitation as set forth by the New Jersey Appellate Division on February 18, 2005, as to Petitioner's direct appeal from his judgment of conviction and sentence:

> The charges against defendant arose from an incident occurring on October 19, 2000, on Throckmorton Street in the Borough of Freehold. The evidence adduced by the State, if credited, discloses the following.
>
> That evening, Anthony Parrish, Amin Suluki and Marcus Bailey were at the home of Timothy Parrish at 79 Throckmorton Street. At approximately 10:00 p.m., co-defendants Michael Simms and Jamaal Sconiers drove to Throckmorton Street and parked in the driveway of a neighbor of Timothy Parrish. A verbal argument ensued between the two groups, but there was no physical confrontation.
>
> Michael Simms and Sconiers got back in the car and left, driving over to the area of Ford Avenue in Freehold. When Michael Simms saw his brother -- the defendant -- he exited the vehicle and they had a conversation, during which Michael Simms asked defendant "if he had a gun on him."
>
> At defendant's direction, Sconiers drove Michael Simms and defendant to a house located on Center Street where defendant had been renting a room. Defendant and Michael Simms went inside the house and, when they emerged, defendant was wearing a dark colored sweatshirt. Defendant then told Sconiers to drive them to the corner of Ford and Lloyd Avenues, where they picked up co-defendant John Simms, the uncle of the

Simms brothers. Sconiers then drove them all to the Parrish house on Throckmorton Street.

When they arrived, defendant alighted from the vehicle and engaged Anthony Parrish in an aggressive verbal argument; Michael Simms, John Simms and Sconiers also exited the vehicle. Anticipating a physical fist fight, Anthony instructed Amin to go inside the Parrish house and tell Timothy to come outside. When Timothy and Amin emerged from the house, Anthony took off his leather jacket and threw it to the ground.

Defendant then took out a nine-millimeter pistol he had concealed on his person and shot Anthony behind his left ear. Defendant then shot Bailey in the face, Timothy in the face, and Amin in the buttocks as he was attempting to run away. None of the victims was armed, nor had they threatened anyone with a weapon. Anthony, Bailey and Timothy sustained severe and life-threatening injuries, but survived. Amin sustained injuries that required abdominal surgery and removal of a portion of his intestines; he also survived.

After the shootings, defendant, Michael Simms, and John Simms entered Sconiers' vehicle, and all four drove away. At defendant's instruction, Sconiers drove them to the home of his friend Velisse Hamilton, in the Cliffwood Beach/Matawan area. Defendant convinced Hamilton to loan him her car, although Hamilton knew nothing about the shootings. Defendant, Michael Simms, and John Simms then drove to New York City and rented a motel room in Manhattan. At defendant's request, his girlfriend Ramona Hickman brought approximately $1,000 in cash and a cell phone to him in the motel room. The next day, they moved to a motel in Yonkers, New York.

Meanwhile, Sconiers had turned himself in to the police and ultimately testified at the trial of defendant and Michael Simms. John Simms and Michael Simms later turned themselves in, and defendant was apprehended in Asbury Park on October 30, 2000.

After his capture, defendant gave a statement to the police, admitting he had shot all four victims. At trial, however, defendant denied shooting Timothy or Amin, and relied on self-defense, testifying he had shot Anthony and Bailey after he saw them reaching for what he thought were weapons. . .

[In this case], the trial judge provided the jurors with a fourteen page, sequential verdict sheet, and then instructed the jury on the four attempted murder

11

charges contained in counts one through four,
essentially in conformity with the model charge for
attempted murder. See Model Jury Charges (Criminal),
Attempted Murder (December 7, 1992). The judge then
explained attempted passion/provocation manslaughter as
a lesser-included offense of attempted murder, and
described the four factors necessary to find that
offense. The judge repeatedly instructed the jury that
the burden to disprove passion/provocation remained, at
all times, with the State.

Although the judge initially stated the jury was to
consider passion/provocation manslaughter only after
considering and finding defendant not guilty of the
primary offense, he explained:

> If the State has disproved at least one of
> the factors of passion/provocation
> manslaughter, you can go back to the
> attempted murder. If the State has failed to
> prove any of those, has failed to prove all
> four of those, if you find that there is
> passion/provocation manslaughter, then you
> find the defendant guilty of
> passion/provocation manslaughter which is a
> lesser offense than attempted murder.

However, later in the charge, the trial judge then
instructed as follows:

> In each of the counts, count one, for
> example, question number one.  If you find
> Thomas Simms not guilty of attempted murder
> of Anthony Parrish, you go to . . .
> [question] 1A . . . How do you find the
> defendant Thomas Simms on the lesser-included
> offense of attempted passion/provocation
> manslaughter.
>
> If you have answered number one guilty, you
> just move right on, you don't consider it. If
> you find him not guilty, you consider the
> attempted passion/provocation manslaughter.
> That goes for each of the defendants in
> regard to all four victims, counts one
> through eight. Each have a lesser included
> offense of attempted passion/provocation
> manslaughter.

...Deliberations began but were interrupted when the
jury requested that it be re-instructed on the elements
of attempted murder and attempted passion/provocation

manslaughter. The judge reiterated his previous
explanation of attempted murder and then moved on to
attempted passion/provocation manslaughter, instructing
in pertinent part:

> If the State has proven those elements [of
> attempted murder] to you beyond a reasonable
> doubt, you find the defendant guilty. If you
> find that the State has failed to prove any
> of those elements, you find him not guilty as
> to each of the four counts; that, as to the
> four victims.

> The next thing you asked me to give the
> elements of passion/provocation manslaughter.
> Defendant is charged with attempted murder.
> He is not charged with attempted
> passion/provocation manslaughter.

> The defendant says you should find me not
> guilty because passion/provocation
> manslaughter is a lesser-included offense and
> then move on to that if you find the
> defendant not guilty of attempted murder.

> The defendant has raised his defense that he
> was provoked to act and his actions were done
> in the heat of passion. Therefore, if you
> find defendant not guilty of attempted
> murder, then you consider the lesser-included
> offense of attempted passion/provocation
> manslaughter.

> In order for the State to carry its burden,
> it must prove beyond a reasonable doubt that
> the provocation was insufficient to arouse
> the passion of an ordinary person beyond his
> power or control.

> Again, the State must prove that the
> provocation was inadequate. Remember I told
> you at the beginning of the case the State
> has the burden of proving the defendant's
> guilt. The defendant could raise defenses but
> the State has the burden of overcoming those.
> So the State has to prove one of those four
> factors is not present.

...[T]he parties did not object to the recharge and
deliberations resumed until the jury submitted the
following...question later that day, as related by the
trial judge:

At 3:10 I received the following question:
Should the jury consider [question] 1 and
[question] 1A on all counts regarding the
attempted murder and attempted passion/
provocation manslaughter as alternatives that
should be considered at the same time or must
the jury find the defendant not guilty on the
attempted murder charge before discussing,
considering guilty or not guilty on the 1A
attempted passion/provocation manslaughter?

The trial judge provided the following response:

Our law is set up, the most serious charge,
we work down and the attempted murder is the
most serious charge. . .

So the answer is that the first thing you
have to do is make a determination as to
whether or not the defendant is guilty . . .
or not guilty of attempted murder of each of
the four victims. . . .If you find no, if you
make a determination that he . . . [is] not
guilty of whatever the courts are, then your
deliberation are finished. With regard to 1
and 1A . . . and so forth, move on down.

If you determine the defendant [is] guilty of
attempted murder, then you consider whether
or not the State has disproved any of the
elements of passion/provocation.

So you are going to make a determination
first as to whether or not the State has
proven beyond a reasonable doubt that the
defendant [is] . . . guilty of attempted
murder. If you answer is no, you move out of
the attempted murder count of the indictment,
you move on to the next.

If you find yes, then you consider those four
factors as to whether or not you reduce the
attempted murder down to passion/provocation
manslaughter which is a lesser offense. Do
you understand? Okay, all right, you can go
back into the room. . . .

The jury then resumed deliberations. Upon inquiry
immediately after providing the instruction, counsel
for defendant expressed the following objection:

The only thing I'm a little concerned is that
the jury, if they determine the lesser-

14

> included offense of attempted passion/
> provocation manslaughter, when they check off
> that box guilty of that, are they going to
> check off attempted murder guilty also? In
> other words, they'll say guilty of attempted
> murder?

At that point, the trial judge acknowledged that the
jury--almost immediately after having been given the
last instruction--had another question, and he
instructed that they write it out. Upon receipt of that
question, the judge stated:

> The question came back, "Your answer is
> inconsistent with what is written on the
> verdict sheet. Is the verdict sheet incorrect
> and if so should we get a revised sheet?"

In response, the judge informed the jury, as follows:

> It was brought to my attention as you walked
> in that one of the attorneys said the same
> thing. The verdict sheet, first question,
> how do you find the defendant Thomas Simms on
> the first count which charges he did commit
> the crime of attempted murder, et cetera.

> Let me just say it again. If you find that
> the two elements of attempted murder for any
> of the counts have been proven to you beyond
> a reasonable doubt, you next have to consider
> passion/provocation and you would consider as
> to whether or not the State has proven one of
> those elements is not present beyond a
> reasonable doubt, then that would fail.

> If the State proves one of those elements to
> you beyond a reasonable doubt, then
> passion/provocation would fail and if you
> find the elements of attempted murder, then
> attempted murder, the verdict would be guilty.

> If you find the State had failed to prove any
> of those four and you find that
> passion/provocation manslaughter is
> appropriate, you would find the defendant not
> guilty of the attempted murder but guilty of
> passion/provocation manslaughter.

Upon inquiry, there was no objection by counsel to this
clarifying instruction....

(Exhibit # 31, Da37-40, 58-64.)

## III. ANALYSIS

### A.   Pro Se Pleading

Petitioner brings his habeas petition as a pro se litigant. A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Att'y Gen., 878 F.2d 714, 721-22 (3d Cir. 1989).

### B.   Exhaustion of Remedies

A state prisoner applying for a writ of habeas corpus in federal court must first "exhaust[] the remedies available in the courts of the State," unless "there is an absence of available State corrective process[] or ... circumstances exist that render such process ineffective". 28 U.S.C. § 2254(b)(1) ("AEDPA"); see Rose v. Lundy, 455 U.S. 509, 515 (1982); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (finding Supreme Court precedent and AEDPA "mandate that prior to determining the merits of [a] petition, [a court] must consider whether [Petitioner] is required to present . . . unexhausted claims to the [state's] courts").[1]

---

[1] Although a petition for a writ of habeas corpus may not be granted if the petitioner has failed to exhaust remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust state court remedies. See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

The exhaustion requirement is intended to allow state courts the first opportunity to pass upon federal constitutional claims, in furtherance of the policies of comity and federalism. Granberry v. Greer, 481 U.S. 129 (1987); Rose, 455 U.S. at 516-18.  Exhaustion also has the practical effect of permitting development of a complete factual record in state court, to aid the federal courts in their review.  Rose, 455 U.S. at 519.

A petitioner exhausts state remedies by presenting federal constitutional claims to each level of the state courts empowered to hear those claims, either on direct appeal or in collateral post-conviction proceedings.  See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838 (1999) ("requiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"); Lambert v. Blackwell, 134 F.3d at 513 (collateral attack in state court not required if petitioner's claim has been considered on direct appeal); 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.")  Once a Petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied. Picard v. Connor, 404 U.S. 270, 275 (1971); Castille v. Peoples, 489 U.S. 346, 350 (1989).

17

The Petitioner generally bears the burden to prove all facts establishing exhaustion.  Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993).  This means that the claims heard by the state courts must be the "substantial equivalent" of the claims asserted in the federal habeas petition.  Picard, 404 U.S. at 275.  Reliance on the same constitutional provision is not sufficient; the legal theory and factual predicate must also be the same.  Id. at 277.  But "when a Petitioner raises the same constitutional question in both state and federal courts and the resolution of that question requires the courts to review the same factual record, the failure of the Petitioner to highlight the same facts in state court as he does in federal court does not mean the federal claim is non-exhausted."  Landano v. Rafferty, 897 F.2d 661, 673 (3d Cir. 1990) (discussing Patterson v. Cuyler, 729 F.2d 925, 929 (3d Cir. 1984) and Bright v. Williams, 817 F.2d 1562, 1565 (11th Cir. 1987)); see Vasquez v. Hillery, 474 U.S. 254, 260 (1986) (holding supplemental evidence presented by prisoner "did not fundamentally alter the legal claim already considered by the state courts"); Stevens v. Del. Corr. Ctr., 295 F.3d 361, 370 (3d Cir. 2002) (citing Vasquez, and concluding that claim was exhausted because affidavits filed in federal court, which contained more facts than submissions filed in state court, did not fundamentally alter legal claim).  Where any available procedure remains for the applicant to raise the question presented in the courts of the

18

state, the applicant has not exhausted the available remedies. 28 U.S.C. § 2254(c).

The exhaustion doctrine also is a "total" exhaustion rule, meaning "a district court must dismiss habeas petitions containing both unexhausted and exhausted claims [('mixed' petitions)]." Lundy, 455 U.S. at 522. When Rose v. Lundy was decided, there was no statute of limitations for filing federal habeas petitions. The enactment in 1996 of a one-year limitations period for § 2254 habeas petitions,[2] however, "'has altered the context in which the choice of mechanisms for handling mixed petitions is to be made.'" Crews v. Horn, 360 F.3d 146, 151 (3d Cir. 2004) (quoting Zarvela v. Artuz, 254 F.3d 374, 379 (2d Cir.), cert. denied, 534 U.S. 1015 (2001)). Because of the one-year limitations period, dismissal of a timely-filed mixed petition may forever bar a petitioner from returning to federal court. "Staying a habeas petition pending exhaustion of state remedies is a permissible and effective way to avoid barring from federal court a Petitioner who timely files a mixed petition." Crews, 360 F.3d at 151. Indeed, "when an outright dismissal could jeopardize the timeliness of a collateral attack, a stay is the only appropriate course of action." Crews, 360 F.3d at 154.

The Supreme Court has somewhat limited the stay-and-abeyance rule announced in Crews:

_____

[2] See 28 U.S.C. § 2244(d).

[S]tay and abeyance should be available only in limited circumstances. ... [S]tay and abeyance is only appropriate when the district court determines there was good cause for the Petitioner's failure to exhaust his claims first in state court. Moreover, even if a Petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.

...

On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the Petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the Petitioner engaged in intentionally dilatory litigation tactics. In such circumstances, the district court should stay, rather than dismiss, the mixed petition. ... For the same reason, if a Petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the Petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the Petitioner's right to obtain federal relief.

Rhines v. Weber, 544 U.S. 269, 277-78 (2005) (citations omitted).

Even where stay and abeyance is appropriate, the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in the one-year statute of limitations.  "Thus, district courts should place reasonable time limits on a Petitioner's trip to state court and back."  Id. at 278; see Crews, 360 F.3d at 154 ("If a habeas petition is stayed, the Petitioner should be given a reasonable interval, normally 30 days, to file his application for state post-conviction relief, and another reasonable interval after the denial of that relief to return to federal court.  If a Petitioner fails to meet either

20

time-limit, the stay should be vacated nunc pro tunc.")
(citations omitted).

Petitioner alleges that he has not exhausted Ground Nine of
his petition, which states that the "[v]erdict pattern produced
by jury proves that jury adhered to erroneous instructions while
deliberating primary offenses, in violation of defendant's Rights
to Trial by Jury and Due Process."  Petitioner further states
that "[a]ppellate counsel's diligence fell short of discovering
value of  the jury's verdict pattern [and] defendant was unable
to discovery same until August 27, 2010, in his capacity as a
layman.  As this discovery occurred outside the time for
exhaustion, Petitioner moves for a stay to exhaust this ground in
the appropriate State Courts."

Respondents argue in response that the claim in Ground Nine
has been fully exhausted in state court, as that claim is the
"substantial equivalent" of the claim raised in Point I of
Petitioner's brief submitted to the Appellate Division on direct
appeal.  Point I of the Appellate Brief states: "Because the
Instructions Given to the Jury Were Confusing and Because the
Charges Relating to the Shooting Were Presented Sequentially on
the Verdict Sheet, the Jurors Were Perforce Directed to Consider
Passion/Provocation Manslaughter Only if They Found the Defendant
Not Guilty of Murder, In Violation of State v. Coyle."

Respondents also argues that "although couched in different
terms, Ground Nine is the 'substantial equivalent' of the claim

Petitioner advanced before the Appellate Division under Point I of his appellate brief.  Petitioner merely points to '[t]he manner in which [the] jury recorded its verdict' as additional evidence in support of his claim that the trial court's erroneous jury instructions on attempted murder and attempted passion/ provocation manslaughter, along with the sequential verdict sheet, violated his Fourteenth Amendment rights to due process and a fair trial.  Petitioner's failure to highlight these same facts in state court does not constitute a failure to exhaust." (Resp. Br. at 35-36.)  Further, Respondents argue that because the final verdict sheet was attached to Petitioner's appellate brief, this Court is privy to the same factual record that was available to the state court. (Resp. Ex. 14, Da14-28).

The Court agrees with Respondents that Petitioner exhausted the claim in Ground Nine of his petition.  Appellate counsel argued in his brief to the Appellate Division on direct appeal that "the court's erroneous instructions and the sequential nature of the verdict sheet combined to preclude passion/provocation manslaughter as a lesser-included offense of first-degree attempted murder, in direct violation of ...Mr. Simms' Fourteenth Amendment due process and fair trial rights."  (Resp. Ex. 14, at 33-34.)  Further, appellate counsel's brief discussed the improper verdict sheet and the results reached by the jury in specific detail.  (Id. at 33-47.)  Finally, the completed verdict sheet was attached to the brief for review by the Appellate Division.

The Appellate Division opinion stated that "[t]he verdict itself suggests the jury fully understood these final instructions and was not misled, since it found defendant guilty of attempted passion/provocation manslaughter for the shootings of Anthony Parrish and Marcus Bailey, the two victims defendant believed had weapons, and guilty of attempted murder of Timothy Parrish and Amin Suluki, the two men defendant conceded had made no threats or threatening motions."  (Resp. Ex. 31, Da64-66.)  It further stated that "[t]o the extent we have not discussed any additional arguments presented by defendant, we find them to be without merit to warrant discussion in this opinion. R. 2:11-3(e)(2)." (Id. at Da72.)  Therefore, this Court finds that the claims in Ground Nine have been exhausted as they are substantially equivalent to those claims raised on direct appeal.

Respondents also argue in their brief that though Petitioner does not so state, some of his claims in Ground Eight of the petition are unexhausted.  Specifically, that Petitioner suffered ineffective assistance of appellate counsel because "[a]ppellate counsel neglected to  present existing proof showing the jury was not guided by curative effort of the court, regarding the manner in which to deliberate offenses containing questions of passion, on issue of erroneous jury instruction"; and "[a]ppellate counsel failed to raise issue of ineffective assistance of trial counsel on direct appeal."  But Respondents argue that the substantive

23

allegations that underlie these two unexhausted claims have been considered and rejected by the state courts.  (See Resp. Ex. #31, Da64-66; Ex. 33 (19-1 to 26-2) (finding no prima facie showing of ineffective assistance of trial counsel).  Therefore, Respondents waive the exhaustion requirement as to these two unexhausted claims raised in Ground Eight of Petitioner's habeas petition.  See 28 U.S.C. § 2254(b)(3); Sharrieff v. Cathel, 574 F.3d 225, 227-30 (3d Cir. 2009); Carpenter v. Vaughn, 296 F.3d 138, 147-48 (3d Cir. 2002).  (Resp. Br. at 37-38).

Therefore, the Court finds that claims in the petition are exhausted and Petitioner has not presented a "mixed petition" appropriate for analysis under Rhines v. Weber.  See 544 U.S. 269, 277-78 (2005) (holding that it would be abuse of discretion for district court to deny stay and dismiss mixed petition if Petitioner had good cause for failure to exhaust, and his unexhausted claims are potentially meritorious).  The Court will deny Petitioner's request for a stay; however, as Petitioner had previously stated that he wished to withdraw his Petition should the Court deny his request for a stay, the Court will re-issue an Order pursuant to Mason v. Meyers,  208 F.3d 414 (3d Cir. 2000), to allow Petitioner the opportunity respond in light of the Court's holding that the claims at issue are exhausted.  If Petitioner no longer wishes to withdraw the petition, the Court

will order Respondents to file an answer.  The Court will issue
an appropriate order.

                                            __s/ Mary L. Cooper_____
                                            **MARY L. COOPER**
                                            United States District Judge

Dated:   May 24, 2011