**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| THOMAS SIMMS, | : | |
| | : | CIVIL ACTION NO. 10-6084 (MLC) |
| Petitioner, | : | |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| GREG BARTKOWSKI, et al., | : | |
| | : | |
| Respondents. | : | |

**COOPER, District Judge**

Petitioner, Thomas Simms, petitions for a writ of habeas corpus under 28 U.S.C. § 2254.  For the reasons stated below, the Petition will be denied.

**I.   BACKGROUND**

**A.   Factual Background**

The relevant facts are set forth in the opinion of the New Jersey Appellate Division.[1]

> The charges against defendant arose from an incident occurring on October 19, 2000, on Throckmorton Street in the Borough of Freehold.  The evidence adduced by the State, if credited, disclosed the following.
>
> That evening, Anthony Parrish, Amin Suluki and Marcus Bailey were at the home of Timothy Parrish at 79 Throckmorton Street. At approximately 10:00 p.m., co-defendants Michael Simms and Jamaal Sconiers drove to Throckmorton Street and parked in the driveway of a neighbor of Timothy Parrish. A verbal argument ensued

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1)

between the two groups, but there was no physical confrontation.

Michael Simms and Sconiers got back in the car and left, driving over to the area of Ford Avenue in Freehold. When Michael Simms saw his brother - the defendant - he exited the vehicle and they had a conversation, during which Michael Simms asked defendant "if he had a gun on him."

At defendant's direction, Sconiers drove Michael Simms and defendant to a house located on Center Street where defendant had been renting a room.  Defendant and Michael Simms went inside the house and, when they emerged, defendant was wearing a dark colored sweatshirt.  Defendant then told Sconiers to drive them to the corner of Ford and Lloyd Avenues, where they picked up co-defendant John Simms, the uncle of the Simms brothers. Sconiers then drove them all to the Parrish house on Throckmorton Street.

When they arrived, defendant alighted from the vehicle and engaged Anthony Parrish in an aggressive verbal argument; Michael Simms, John Simms and Sconiers also exited the vehicle. Anticipating a physical fist fight, Anthony instructed Amin to go inside the Parrish house and tell Timothy to come outside. When Timothy and Amin emerged from the house, Anthony took off his leather jacket and threw it to the ground.

Defendant then took out a nine-millimeter pistol he had concealed on his person and shot Anthony behind his left ear. Defendant then shot Bailey in the face, Timothy in the face, and Amin in the buttocks as he was attempting to run away. None of the victims was armed, nor had they threatened anyone with a weapon. Anthony, Bailey and Timothy sustained severe and life-threatening injuries, but survived. Amin sustained injuries that required abdominal surgery and removal of a portion of his intestines; he also survived.

After the shootings, defendant, Michael Simms, and John Simms entered Sconiers' vehicle, and all four drove away. At defendant's instruction, Sconiers drove them to the home of his friend Velisse Hamilton, in the Cliffwood Beach/Matawan area. Defendant convinced Hamilton to loan him her car, although Hamilton knew nothing about the shootings. Defendant, Michael Simms, and John Simms then drove to New York City and rented a motel room in Manhattan. At defendant's request, his girlfriend Ramona Hickman brought approximately $1,000

2

in cash and a cell phone to him in the motel room. The next day, they moved to a motel in Yonkers, New York.

Meanwhile, Sconiers had turned himself in to the police and ultimately testified at the trial of defendant and Michael Simms. John Simms and Michael Simms later turned themselves in, and defendant was apprehended in Asbury Park on October 30, 2000.

After his capture, defendant gave a statement to the police, admitting he had shot all four victims. At trial, however, defendant denied shooting Timothy or Amin, and relied on self-defense, testifying he had shot Anthony and Bailey after he saw them reaching for what he thought were weapons...

State of New Jersey v. Simms, No. A-1781-02T4 (N.J. App.Div. Feb. 18, 2005.)

### B.   Procedural History

Petitioner was indicted on March 21, 2001 by a Monmouth County Grand Jury, which charged Petitioner with four counts of attempted murder; four counts of aggravated assault; four counts of aggravated assault with a deadly weapon; four counts of aggravated assault, pointing a firearm; possession of a weapon for an unlawful purpose; unlawful possession of a weapon; acquiring a handgun without a permit to purchase; evidence tampering; hindering apprehension; and conspiracy to commit murder. (Resp't Br., Ex. 14, Pet'r's Br. Direct Appeal, Da1-13, Monmouth County Indictment No. 01-03-0487, Docket Entry No. 19-18.)

From May 7, 2002 through May 23, 2002, Petitioner and his co-defendant, Michael Simms, were tried jointly in New Jersey Superior Court, Law Division, before the Honorable Ira E. Kreizman, J.S.C. and a jury. (Id. at Ex. 1-12.)  On May 23,

2002, the jury found Petitioner guilty of two counts of attempted murder, two counts of attempted passion/provocation manslaughter, and all of the remaining charges in the indictment except for acquiring a handgun without a permit to purchase and conspiracy to commit murder.  (Id. at Ex. 14, Da14-27.)

Petitioner moved for a new trial arguing: (1) the charge as to attempted passion/provocation manslaughter was incomplete since it did not include instructions on "course of ill treatment" or "mutual combat"; and (2) the verdict was inconsistent.  (Id. at Ex. 13, Mot. New Trial Tr. 10:11-16:19, Docket Entry No. 19-17.)

On September 27, 2002, Judge Kreizman denied Petitioner's motion for a new trial and imposed sentence.  (Id. at 28:6 - 41:2.)  Petitioner received an aggregate sentence of forty years of imprisonment subject to an 85% parole disqualifier.  (Id. at Ex. 14 Da28-30, Judgment of Conviction.)

On or about December 9, 2002, a Notice of Appeal was filed on Petitioner's behalf in the New Jersey Appellate Division.  (Id. at Ex. 14 Da31, Notice of Appeal.)  Petitioner also filed a pro se appellate brief.  (Id. at Ex. 16, Pet'r's Pro Se Br.)  On February 18, 2005, the Appellate Division affirmed Petitioner's conviction and the imposition of consecutive terms on the attempted murder counts, but vacated Petitioner's sentences and remanded for re-sentencing in accordance with Blakely v. Washington, 542 U.S. 296 (2004), as interpreted and applied in

4

State v. Natale, 861 A.2d 148 (N.J. App.Div. 2004), aff'd in part & rev'd in part, 878 A.2d 724 (N.J. 2005).  Both the State and Petitioner's counsel petitioned for certification to the New Jersey Supreme Court.  (Id. at Exs. 20 & 21.)

On September 23, 2005, the New Jersey Supreme Court granted the State's petition for certification, but summarily remanded the matter to the trial court for re-sentencing in accordance with State v. Natale.  (Id. at Ex. 34 Da 68-69.)  The New Jersey Supreme Court denied Petitioner's cross-petition for certification.  (Id.)

On November 29, 2005, pursuant to Natale, Judge Kreizman re-sentenced Petitioner and imposed the original sentence.  (Id. at Ex. 27, Tr. Re-Sentencing 18:1-20:18.)  Petitioner appealed and on February 6, 2007, the Appellate Division's Excessive Sentencing Panel affirmed Petitioner's sentence.  (Id. at Ex. 29, Tr. Excessive Sentencing Oral Arg. 72:21-73:2.)  On April 20, 2007, Petitioner filed a pro se petition for post-conviction relief ("PCR").  (Id. at Ex. 34.)

Petitioner was subsequently appointed counsel to represent him in the PCR proceedings, and, on August 19, 2008, counsel filed a brief in support of Petitioner's PCR petition.  (Id. at Ex. 31.)  The State opposed the PCR application.  On November 13, 2008, Judge Kreizman denied the petition.  (Id. at Ex. 33, Tr. PCR Proceedings.)  On April 22, 2009, Petitioner filed a Notice of

Appeal and brief in support with the Appellate Division.  (Id. at Ex. 34, Pet'r's Br. Supp. PCR Appeal.)  Petitioner also filed a pro se supplemental brief.  (Id. at Ex. 35, Pet'r's Pro Se Br. Supp. PCR Appeal.)  On May 14, 2010, the Appellate Division affirmed the order of the trial court denying PCR for substantially the reasons expressed by Judge Kreizman in his November 13, 2008 opinion.  State v. Simms, 2010 WL 1929780 (N.J. App. Div. May 14, 2010.)  On October 7, 2010, the New Jersey Supreme Court denied Petitioner's petition for certification.

On or about November 22, 2010, Petitioner filed a petition for a writ of habeas corpus with this Court, arguing:

Ground One: Confusing jury instructions, sequential verdict sheet, on charges of passion, forced jury to consider passion only after finding defendant not guilty of attempted murder in violation of defendant's Fourteenth Amendment, Due Process and Fair Trial Right's [sic].

Ground Two: Trial court refused to charge continuing course of ill treatment [sic] in passion/provocation instruction, depriving defendant of Due Process and Fair Trial Rights.

Ground Three: Confusing and misleading jury instructions, in violation of defendant's Rights to Fair Trial and Due Process

Ground Four: Sentencing court was not guided by general provisions while imposing consecutive sentence, and punishment does not fit the crime

Ground Five: The trial court erred in failing to precisely identify what help was needed regarding question from the jury during deliberations, consequently furnishing an inappropriate response that did not deliver the guidance needed. Counsel was ineffective for failing to object to same.

Ground Six: Sentencing court abused its discretion in consecutive sentence, undermining the mitigating facts

found by the jury, in violation of defendant's
Constitutional Right to a Trial by Jury.

Ground Seven: Defendant was prejudiced by accumulation
of errors collectively impacting jury deliberations and
the outcome of trial, impeding on defendant's Rights to
Due Process and Trial by Jury.

Ground Eight: Denial of effective assistance of
appellate counsel, in violation of defendant's
Constitutional Right to Counsel.

Ground Nine: Verdict pattern produced by jury proves
the jury adhered to erroneous instructions while
deliberating primary offenses, in violation of
defendant's Rights to Trial by Jury and Due Process.

Petitioner states in his petition that the claim raised in

Ground Nine is unexhausted.  On November 22, 2010, Petitioner

moved to stay his habeas petition and hold it in abeyance so that

he could return to state court to exhaust the allegedly

unexhausted claim in Ground Nine.  (Docket Entry No. 2.)  On

February 2, 2011, Petitioner filed a second petition for PCR in

New Jersey Superior Court, Law Division, arguing:

(1) Appellate counsel's performance on direct appeal
was deficient due to failure to include evidence of
deliberating process jury followed in erroneous
instruction issue, and failure to preserve other
meritorious issues suitable for direct appeal for
habeas review, in violation of Defendant's
constitutional right to counsel;

(A) Verdict pattern produced by jury proves jury
adhered to erroneous instruction while deliberating
primary offenses, in violation of defendant's Rights to
Trial by Jury and Due Process;

(B) Appellate counsel's failure to raise ineffective
assistance of trial counsel issue, hinders appellate
relief and prevents Federal review;

(C) Appellate counsel failed to raise meritorial [sic]
issue that consecutive terms of attempted murder
impedes on findings of the jury;

> (D) Appellate counsel failed to raise meritorial [sic] issue that isolated jury deliberations of multiple counts of passion precluded consideration of evidence connecting all victims to provocation, absent specific instructions.

(Resp'ts Br., Ex. 37, 38; Pet'r's Mot. to Stay, Attach. 1, 6-14.)

This Court issued a notice to Petitioner on February 18, 2011, pursuant to <u>Mason v. Meyers</u>, 208 F.3d 414 (3d Cir. 2000), advising him that he may either: (1) "have [his] ending § 2254 Petition ruled upon as filed; or (2) [w]ithdraw [his] pending § 2254 Petition and file one all-inclusive § 2254 Petition subject to the one-year statute of limitations." Also on that date, this Court entered an Order directing Respondents to submit a response to Petitioner's motion for a stay within 45 days. On March 1, 2011, Petitioner filed a request for a 90-day extension of time in which to make a decision regarding his options under the <u>Mason</u> Order. On March 15, 2011, Petitioner submitted a response to the <u>Mason</u> Order, stating that he chose to withdraw his pending § 2254 Petition and file one all-inclusive § 2254 Petition subject to the one-year statute of limitations but that choice was expressly contingent on the denial of his request for the extension and if the Court denied Petitioner's request for a stay. (Docket Entry No. 8.) Petitioner further stated that "in the event of an extension and/or granting of the motion to stay, [his] decision to withdraw pending § 2254 Petition shall become null and void." On April 4, 2011, Respondents filed their response to the motion to stay.

On May 24, 2011, this Court entered an opinion and order denying Petitioner's motion for a stay, and gave Petitioner 30 days to inform the Court whether he still wished to withdraw his petition, as he had previously stated he wished to do if the stay were denied.  (Docket Entry Nos. 11 & 12.)  Petitioner responded and stated that he wished to have his petition ruled upon as filed.  (Docket Entry No. 13.)  The Court entered an order to answer, and Respondents filed their answer.  (Docket Entry No. 19.)  Petitioner replied.  (Docket Entry No. 20.)

## II.  DISCUSSION

### A.  Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254 provides:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of

the applicant to exhaust the remedies available in the
courts of the State...

(d) An application for a writ of habeas corpus on
behalf of a person in custody pursuant to the judgment
of a State court shall not be granted with respect to
any claim that was adjudicated on the merits in State
court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme
Court of the United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of the
evidence presented in the State court proceeding.

"A state-court decision is contrary to this Court's clearly

established precedents if it applies a rule that contradicts the

governing law set forth in our cases, or if it confronts a set of

facts that is materially indistinguishable from a decision of

this Court but reaches a different result."  Brown v. Payton,
544

U.S. 133, 141.  The "unreasonable application" prong of AEDPA

applies when a "state court identifies the correct governing legal

principle from [the Supreme] Court's decisions but unreasonably

applies that principle to the facts."  Adamson v. Cathel, 633

F.3d 248, 255-56 (3d Cir. 2011) (quoting Wiggins v. Smith, 539

U.S. 510, 520 (2003)).  The test is "an objective one and does

not permit a court to grant relief simply because the state court

might have incorrectly applied federal law to the facts of a

certain case."  Id. (citing Wiggins, 539 U.S. at 520-21).

A state court may render an adjudication on the merits of a

federal claim by rejecting the claim in an order unaccompanied by

an opinion explaining the reasons relief has been denied. See Harrington v. Richter, 131 S.Ct. 770, 784 (2011) ("state court need not cite or even be aware of [Supreme Court] cases.... Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.")

As to claims presented to, but not adjudicated by, the state courts, however, a federal court may use pre-AEDPA independent judgment. See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000); Purnell v. Hendricks, 2000 WL 1523144, at *6 n.4 (D.N.J. Oct. 16, 2000). In such instances, "the federal habeas court must conduct a de novo review over pure legal questions and mixed questions of law and fact, as a court would have done prior to the enactment of AEDPA." Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001) (citing McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999)). "However, § 2254(e)(1) still mandates that the state court's factual determinations are presumed correct unless rebutted by clear and convincing evidence." Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009) (citing Appel, 250 F.3d at 210.) The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal case law, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Att'y Gen., 878 F.2d 714, 721-22 (3d Cir. 1989).

**B.   Analysis**

**1.  Jury Charge (Grounds One, Two, Three, Five, and Nine)**

Petitioner here challenges the jury instructions given at trial.  Generally, a jury instruction that is inconsistent with state law does not merit federal habeas relief.  Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.  It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. In addition, in reviewing an ambiguous instruction...we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly." "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations omitted).  Thus, the Due Process Clause is violated only where

"the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law." Smith v. Horn, 120 F.3d 400, 416 (3d Cir. 1997); see In re Winship, 397 U.S. 358, 364 (1970) ("Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) (instructions that suggest jury may convict without proving each element of crime beyond reasonable doubt violate constitutional rights of accused).

Such a constitutional error is generally subject to "harmless error" analysis. Smith v. Horn, 120 F.3d at 416-17; Neder v. United States, 527 U.S. 1, 8-11 (1999). "[I]f the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless." Id. at 418 (citing California v. Roy, 519 U.S. 2, 5 (1996)). In evaluating a challenged instruction:

> a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge. If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.

Middleton v. McNeil, 541 U.S. 433, 437 (2004) (internal quotes and citations omitted). Further, "a state court's conclusion that evidence does not justify an instruction on manslaughter is

purely a matter of state law, and cannot be challenged in federal habeas corpus proceedings." Sanabria v. Morton, 934 F.Supp. 138, 144 (D.N.J. 1996) (citing Kontakis v. Beyer, 19 F.3d 110 (3d Cir. 1994)).

Petitioner raised the issues related to the jury instructions and verdict sheet on direct appeal. The Appellate Division stated the following in denying Petitioner's appeal:

> Here, the trial judge provided the jurors with a fourteen page, sequential verdict sheet, and then instructed the jury on the four attempted murder charges contained in counts one through four, essentially in conformity with the model charge for attempted murder. See Model Jury Charges (Criminal), Attempted Murder (December 7, 1992). The judge then explained attempted passion/provocation manslaughter as a lesser-included offense of attempted murder, and described the four factors necessary to find that offense. The judge repeatedly instructed the jury that the burden to disprove passion/provocation remained, at all times, with the State.
>
> Although the judge initially stated the jury was to consider passion/provocation manslaughter only after considering and finding defendant not guilty of the primary offense, he explained:
>
>> If the State has disproved at least one of the factors of passion/provocation manslaughter, you can go back to the attempted murder. If the State has failed to prove any of those, has failed to prove all four of those, if you find that there is passion/provocation manslaughter, then you find the defendant guilty of passion/provocation manslaughter which is a lesser offense than attempted murder.
>
> However, later in the charge, the trial judge then instructed as follows:
>
>> In each of the counts, count one, for example, question number one. If you find Thomas Simms not guilty of attempted murder

14

> of Anthony Parrish, you go to . . .
> [question] 1A . . . How do you find the
> defendant Thomas Simms on the lesser-included
> offense of attempted passion/provocation
> manslaughter.
>
> If you have answered number one guilty, you
> just move right on, you don't consider it. If
> you find him not guilty, you consider the
> attempted passion/provocation manslaughter.
> That goes for each of the defendants in
> regard to all four victims, counts one
> through eight. Each have a lesser included
> offense of attempted passion/provocation
> manslaughter.

This instruction was clearly improper because it gave
"the jury the impression that it need [consider]
passion/provocation manslaughter only if it fails to
find that purposeful and knowing [attempted] murder
occurred [.]" Heslop, 135 N.J. at 322.

Deliberations began but were interrupted when the jury
requested that it be re-instructed on the elements of
attempted murder and attempted passion/provocation
manslaughter. The judge reiterated his previous
explanation of attempted murder and then moved on to
attempted passion/provocation manslaughter, instructing
in pertinent part:

> If the State has proven those elements [of
> attempted murder] to you beyond a reasonable
> doubt, you find the defendant guilty. If you
> find that the State has failed to prove any
> of those elements, you find him not guilty as
> to each of the four counts; that, as to the
> four victims.
>
> The next thing you asked me to give the
> elements of passion/provocation manslaughter.
> Defendant is charged with attempted murder.
> He is not charged with attempted
> passion/provocation manslaughter.
>
> The defendant says you should find me not
> guilty because passion/provocation
> manslaughter is a lesser-included offense and
> then move on to that if you find the
> defendant not guilty of attempted murder.
>
> The defendant has raised his defense that he
> was provoked to act and his actions were done

15

> in the heat of passion. Therefore, if you
> find defendant not guilty of attempted
> murder, then you consider the lesser-included
> offense of attempted passion/provocation
> manslaughter.
>
> In order for the State to carry its burden,
> it must prove beyond a reasonable doubt that
> the provocation was insufficient to arouse
> the passion of an ordinary person beyond his
> power or control.
>
> Again, the State must prove that the
> provocation was inadequate. Remember I told
> you at the beginning of the case the State
> has the burden of proving the defendant's
> guilt. The defendant could raise defenses but
> the State has the burden of overcoming those.
> So the State has to prove one of those four
> factors is not present.

Although again incorrect, the parties did not object to
the recharge and deliberations resumed until the jury
submitted the following...question later that day, as
related by the trial judge:

> At 3:10 I received the following question:
> Should the jury consider [question] 1 and
> [question] 1A on all counts regarding the
> attempted murder and attempted passion/
> provocation manslaughter as alternatives that
> should be considered at the same time or must
> the jury find the defendant not guilty on the
> attempted murder charge before discussing,
> considering guilty or not guilty on the 1A
> attempted passion/provocation manslaughter?

The trial judge provided the following response:

> Our law is set up, the most serious charge,
> we work down and the attempted murder is the
> most serious charge. . .
>
> So the answer is that the first thing you
> have to do is make a determination as to
> whether or not the defendant is guilty . . .
> or not guilty of attempted murder of each of
> the four victims. . . .If you find no, if you
> make a determination that he . . . [is] not
> guilty of whatever the counts are, then your
> deliberations are finished. With regard to 1
> and 1A . . . and so forth, move on down.

16

> If you determine the defendant [is] guilty of
> attempted murder, then you consider whether
> or not the State has disproved any of the
> elements of passion/provocation.
>
> So you are going to make a determination
> first as to whether or not the State has
> proven beyond a reasonable doubt that the
> defendant [is] . . . guilty of attempted
> murder. If your answer is no, you move out of
> the attempted murder count of the indictment,
> you move on to the next.
>
> If you find yes, then you consider those four
> factors as to whether or not you reduce the
> attempted murder down to passion/provocation
> manslaughter which is a lesser offense. Do
> you understand? Okay, all right, you can go
> back into the room. . . .

Again, this instruction was defective.  The jury then
resumed deliberations. Upon inquiry immediately after
providing the instruction, counsel for defendant
expressed the following objection:

> The only thing I'm a little concerned is that
> the jury, if they determine the
> lesser-included offense of attempted
> passion/provocation manslaughter, when they
> check off that box guilty of that, are they
> going to check off attempted murder guilty
> also? In other words, they'll say guilty of
> attempted murder?

At that point, the trial judge acknowledged that the
jury - almost immediately after having been given the
last instruction - had another question, and he
instructed that they write it out. Upon receipt of that
question, the judge stated:

> The question came back, "Your answer is
> inconsistent with what is written on the
> verdict sheet.  Is the verdict sheet
> incorrect and if so should we get a revised
> sheet?"

In response, the judge informed the jury, as follows:

> It was brought to my attention as you walked in
> that one of the attorneys said the same thing.
> The verdict sheet, first question, how do you find
> the defendant Thomas Simms on the first count

17

which charges he did commit the crime of attempted murder, et cetera.

Let me just say it again. If you find that the two elements of attempted murder for any of the counts have been proven to you beyond a reasonable doubt, you next have to consider passion/provocation and you would consider as to whether or not the State has proven one of those elements is not present beyond a reasonable doubt, then that would fail.

If the State proves one of those elements to you beyond a reasonable doubt, then passion/provocation would fail and if you find the elements of attempted murder, then attempted murder, the verdict would be guilty.

If you find the State had failed to prove any of those four and you find that passion/provocation manslaughter is appropriate, you would find the defendant not guilty of the attempted murder but guilty of passion/provocation manslaughter.

Upon inquiry, there was no objection by counsel to this clarifying instruction, which informed the jurors they should consider whether defendant purposefully or knowingly attempted to cause the death of the victims and, if so, whether defendant acted under adequate provocation.  The circumstances presented are unique, if not extraordinary.  The jury displayed remarkable intelligence and persistence in seeking proper direction from the trial judge.  We are satisfied, as were counsel,  that this last charge adequately ameliorated the prior erroneous instructions, and that the jury fully understood its obligation to first consider whether the State had proven beyond a reasonable doubt that the purposeful killing was not the product of passion/provocation before considering the attempted murder charges.

The jury's questions astutely recognized the initial confusing nature of the charge given, and the supplemental charge by the trial judge following their last question focused the jury's deliberations on consideration of the elements of attempted passion/ provocation manslaughter together with the attempted murder element of purposeful and knowing conduct.  See Heslop, supra, 135 N.J. at 322-28 (holding that although the challenged instruction contained the same "sequential" error disapproved in Coyle, supra, 119 N.J. at 224, the recharging of appropriate instructions

sufficiently corrected the error).  Moreover, we note
that the instructions of the trial judge consistently
placed the burden on the State to disprove the
passion/provocation elements by making it clear that
the State had to demonstrate beyond a reasonable doubt
that defendant was not adequately provoked.

The verdict itself suggests the jury fully understood
these final instructions and was not misled, since it
found defendant guilty of attempted passion/provocation
manslaughter for the shootings of Anthony Parrish and
Marcus Bailey, the two victims defendant believed had
weapons, and guilty of attempted murder of Timothy
Parrish and Amin Suluki, the two men defendant conceded
had made no threats or threatening motions.  We also
note that the record does not contain "overwhelming
evidence  of passion/provocation as the singular and
distinctive factor" that led to the attacks by
defendant.  Heslop, supra, 135 N.J. at 327.  As in
Heslop, viewing the jury instructions as a whole "a
review of the factual record does not suggest the
likelihood that the court's explanation of the law of
[attempted] murder and [attempted passion/provocation]
manslaughter, the manner in which the jury
deliberations should progress, and the State's burden
of proof resulted in or contributed to an improper
verdict."  Id. at 328.

(Answer, Ex. 31, Pet'r's PCR Br. Da 58-67, State v. Simms, No. A-

1781-02T4 (N.J. App.Div. February 18, 2005).)

As to the course of ill treatment instruction, Petitioner

raised this issue in his motion for a new trial before the trial

judge immediately prior to sentencing on September 27, 2002.

(Answer, Ex. 13, Sentencing Tr., Sept. 27, 2002, Docket Entry No.

19-17.)  The trial judge denied his request, stating:

I find that the facts do not support the need to include
a mutual combat and ill treatment charge with regard to
attempted passion/provocation manslaughter. . . .

This was not a fight at the Freehold Borough football
field.  This was not a fight where two sides said we'll
meet you outside of town and we'll have a fight.

19

In this case, Thomas Simms and Michael Simms and two others drove up to the victim's house on Throckmorton Street uninvited.  He was the aggressor.  He was the one who went face to face with Anthony Parrish.  Yes, there were heated words exchanged and there was some shoving involved.

I find that heated words and shoving do not amount to evidence to invoke the charge of mutual combat.  Ill treatment, this is not a case of ill treatment. Thomas Simms was not wronged; maybe members of his family felt that they were. But this was not a course of conduct aimed at Thomas Simms.

I find that there was insufficient evidence to support an instruction on a continuing course of ill treatment or upon mutual combat. The cases of [State v. Erazo, 594 A.2d 232 (N.J. 1991)]; [State v. Guido, 191 A.2d 45 (N.J. 1963)]; [State v. Viera, 787 A.2d 256 (N.J. Super.Ct. App. Div. 2001)]; and [State v. Vigilante, 608 A.2d 425 (N.J. Super.Ct. App. Div. 1992)] are all helpful in making that determination as to the consistency of the verdicts.

This jury had the opportunity to assess the credibility of the various witnesses. The defendant, Thomas Simms, was incredible. As I reviewed his testimony again, and as I reviewed his statement, it was apparent that he was making it up as he went along when he testified here in court. It was in tremendous contradiction to a) the facts, and b) his earlier statement.

This jury had the opportunity to make the same kinds of observations. And the jury made the determination that, it appeared to me anyway, that Thomas [Simms] should be found not guilty of attempted murder [of] Anthony Parrish, but that he should be found guilty of attempted passion/provocation manslaughter because there was some pushing and shoving and words between Thomas [Simms] and Anthony Parrish. Anthony had taken off his jacket, getting ready to fight.

In regard to Tim, he testified that he just walked off the porch. The woman with whom he lived testified to pretty much the same thing. Other people, lots of people, testified that he just walked off the porch and was shot. He was shot between the eyes.

In regard to Randall Bailey, Marcus Bailey, the jury determined that Thomas should be found not guilty of attempted murder. They made the assessment that he was

somewhat involved in the pushing and shoving and that
he should be, that Thomas should be found guilty of
attempted passion/provocation manslaughter of Randall
or Marcus Bailey; that there was some aggressive
behavior by Marcus.

The jury determined that Thomas should be found guilty
of attempted murder of Amin Suluki.  Well, Amin was
shot from about eight feet, his back turned, running
away, shot in the buttocks and the jury found that he
was not involved in passion/provocation; that there was
an attempt to take his life by the defendant. I don't
find that to be at all inconsistent.

The jury was able to discern what happened out there.
And it is just as logical that they made the same
conclusion I just did as what the defense has suggested.
He says that there are two levels of culpability
arising from a single incident, the involvement of the
victims was different. And the jury made that
determination. Is it a compromised verdict? It is not.

(Id. at 34:21-38:7.)

The Appellate Division affirmed on appeal:

After analyzing the record in the light of the written
arguments advanced by the parties, we conclude this
issue is without sufficient merit to warrant extensive
discussion in a written opinion, [N.J. Ct. R.
2:11-3(e)(2)], and we reject same substantially for the
reasons articulated by the trial judge on September 27,
2002, in his oral opinion denying defendant's motion
for a new trial. The evidence at trial, including
defendant's own testimony, supports the finding of the
trial judge that there was an insufficient showing of a
continuing course of ill treatment toward defendant or
that he was objectively provoked by the prior incidents
related at trial, sufficient to warrant the requested
charge.

(Answer, Ex. 31, Pet'r's PCR Br. Da 66-67, State v. Simms,

No. A-1781-02T4 (N.J. App.Div. Feb. 18, 2005).)

The New Jersey Appellate Division ruled that the challenged

jury instructions, viewed in their entirety, correctly conveyed

the governing state law principles to the jury.  This Court finds

21

that Petitioner has not demonstrated that the entire trial and
the conviction were so prejudiced by the charge as to violate the
principles of fundamental fairness and due process.  There was
ample evidence against Petitioner to justify his conviction,
including his own confession and the testimony of several
witnesses.  Further, as stated by the Appellate Division, the
findings of the jury as to the victims Petitioner believed had
weapons as compared to those victims Petitioner did not believe
had weapons, show that the jury ultimately understood the
instructions given.  The conviction was neither fundamentally
unfair, nor violated due process.

Furthermore, the decision of the state court was neither
contrary to, nor an unreasonable application of, clearly
established federal law, nor was it based on an unreasonable
determination of the facts in light of the evidence presented.
That the jury chose to believe the State's version over
Petitioner's version does not render the trial unfair.  No
"substantial and injurious effect" exists.  Petitioner is not
entitled to relief on these grounds.

### 2.   Sentencing Claims (Grounds Four and Six)

In Ground Four, Petitioner argues that the sentencing court
"was not guided by general provisions when chosing [sic] to
impose consecutive sentences on Defendant."  He argues:

> 1.  Sentencing court did not provide separate statement
> of facts to support its discretion to impose
> consecutive sentences.

22

2. The court failed to consider various elements supporting concurrent sentence, including;[sic] (a) The crimes and their objectives were not predominantly independent of each other, (b) Victims were injured in single episode of violence, (c) The crimes were not committed at separate times or places, and (d) Convictions for sentences imposed were not numerous.

3. Sentencing court improperly used aggravating factor number one, to impose maximum term for offenses, where factor does not apply to facts of case.

4. Sentencing court improperly used aggravating factor number two, to impose maximum and/or consecutive term for offenses, where factor does not apply to facts of the case.

5. Sentencing court used aggravating factor to enhance sentence, where factor was the element of offense.

6. The court fashioned consecutive sentence to arrive at the longest period of incarceration, impeding on mitigating factors found by the jury.

7. The jury found that the law holds Anthony Parrish accountable for the role he played in facilitating the crime committed against him. That mitigation is required to reduce culpability of defendant.

8. The jury found Marcus Bailey accountable for facilitating, thus requiring mitigation of defendant's liability.

9. Sentencing court exceeded punishment parameters implied by the jury as fact finders.

(Pet. 5-6.) Petitioner raises nearly identical arguments in Ground Six of his petition.

As stated above, the violation of a right created by state law is not cognizable as a basis for federal habeas relief. Estelle, 502 U.S. at 67-68 ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting Lewis v. Jeffers, 497 U.S. 764, 680 (1990))); see 28 U.S.C. § 2254(a) ("district court shall entertain an

application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States"). Accordingly, based on the supporting facts Petitioner alleges for this ground, which relate only to alleged violations of state law, Petitioner is not entitled to federal habeas relief.

To the extent Petitioner is alleging that the imposition of consecutive terms violates his Sixth Amendment rights, that argument would also fail. As discussed above, on November 29, 2005, pursuant to State v. Natale, Judge Kreizman re-sentenced Petitioner and imposed the original sentence. Petitioner appealed. On February 6, 2007, the Appellate Division's Excessive Sentencing Panel affirmed Petitioner's sentence, stating that: "[h]aving considered the record and argument of counsel and appearing that the issues on appeal relate solely to sentence, we're satisfied the sentence is not manifestly excessive. It's not unduly punitive. It doesn't constitute an abuse of discretion and the judgment is affirmed." (Answer, Ex. 31., Tr. Excessive Sentencing Oral Arguments 72:21-73:2, February 6, 2007, Docket Entry No. 19-33.) A federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies." See Grecco v.

24

O'Lone, 661 F.Supp. 408, 415 (D.N.J. 1987) (citation omitted).
Thus, a challenge to a state court's discretion at sentencing is
not reviewable in a federal habeas proceeding unless it violates
a separate federal constitutional limitation.  See Pringle v. Ct.
of Common Pleas, 744 F.2d 297, 300 (3d Cir. 1984); see also 28
U.S.C. § 2254(a); Estelle, 502 U.S. at 67.

    Apprendi v. New Jersey, 530 U.S. 466 (2000), holds that
pursuant to the Sixth Amendment right to trial by jury, "[o]ther
than the fact of a prior conviction, any fact that increases the
penalty for a crime beyond the prescribed statutory maximum must
be submitted to a jury, and proved beyond a reasonable doubt."
Id. at 490.  Blakely reversed a sentence imposed under Washington
state's sentencing system, explaining that "the relevant
statutory maximum is not the maximum sentence a judge may impose
after finding additional facts, but the maximum he may impose
without any additional findings."  542 U.S. at 302 (internal
quotations omitted).  United States v. Booker, 543 U.S. 220
(2005), applied the rule of Apprendi to the United States
Sentencing Guidelines, finding the Guidelines unconstitutional,
and rendering them merely advisory, rather than mandatory.

    In State v. Natale, the New Jersey Supreme Court evaluated
the constitutionality of the New Jersey sentencing system in view
of the Apprendi line of cases.  As it allowed for sentencing
beyond the statutory maximum presumptive term, the New Jersey
Supreme Court found the state sentencing system to be

unconstitutional and determined that the appropriate remedy would be to follow the lead of <u>Booker</u> and abolish the presumptive terms.  "Without presumptive terms, the 'statutory maximum' authorized by the jury verdict or the facts admitted by a defendant at his guilty plea is the top of the sentencing range for the crime charged, e.g., ten years for a second-degree offense."  <u>Natale</u>, 878 A.2d 724 (citation omitted).

The New Jersey appellate courts have rejected the argument that the imposition of consecutive sentences implicates the <u>Blakely</u> line of cases or otherwise violates the Sixth Amendment right to a jury trial.

> Under our sentencing scheme, there is no presumption in favor of concurrent sentences and therefore the maximum potential sentence authorized by the jury verdict is the aggregate of sentences for multiple convictions. See N.J.S.A. 2C:44-5(a). In other words, the sentencing range is the maximum sentence for each offense added to every other offense....
>
> In that vein, consecutive sentences do not invoke the same concerns that troubled the Supreme Court in <u>Apprendi</u>, <u>supra</u>, <u>Blakely</u>, <u>supra</u>, and <u>Booker</u>, <u>supra</u>. As in any indeterminate sentencing scheme, the jury verdict in this case allowed the judge to impose a consecutive or concurrent sentence within the maximum range based on the sentencing court's discretionary findings.  Unlike a trial court that engages in factfinding as the basis for exceeding the sentence authorized by a jury's verdict, the court here imposed consecutive sentences that were supported by the jury's separate guilty verdicts for each offense. With the exception of merged offenses, defendant knew that he potentially could be sentenced to the sum of the maximum sentences for all of the offenses combined.

<u>State v. Abdullah</u>, 878 A.2d 746, 756-57 (N.J. 2005); <u>see</u> <u>State v. Pittman</u>, 2006 WL 561278, at *2 (N.J. App.Div. Mar. 9, 2006).

Petitioner was sentenced in accordance with state law. Where, as here, there is no presumption under state law in favor of concurrent sentences, consecutive sentences do not exceed the prescribed statutory maximum sentence.  Petitioner was re-sentenced by the trial court in accordance with <u>Natale</u>, and the sentence was upheld by the Appellate Division's Excessive Sentence Panel.  The decision of the state court was neither contrary to, nor an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. Petitioner's rights under the Sixth Amendment have not been violated and Petitioner has not provided this Court with any justification to grant habeas relief and upset the state court proceedings as to his state law sentence.

### 3.   Ineffective Assistance of Counsel Claims (Grounds Five, Seven and Eight)

In Grounds Five and Seven, Petitioner alleges ineffective assistance of trial counsel because counsel failed to: (1) object to the erroneous jury instructions and verdict sheet; (2) "adequately prepare for trial by sufficiently researching guidelines governing passion/provocation manslaughter to protect the rights of defendant in affirmative defense;" (3) "object to the numerous errors of the court's jury charge, including sequential jury deliberations of offenses involving questions of passion, what type of verdict would deliberations of passion

follow, lack of clear instructions directing the jury how to acquit defendant of attempted murder and lesser included offense, and failure of the court to advise the jury how circumstantial evidence could be applied to offenses and transcend independent deliberations of various victims to address any associations to the provocation;" and (4) "object to the sentencing court's deviation of facts found by the jury in the manner that consecutive sentence was fashioned."

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.  The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a criminal defendant of the right by failing to render adequate legal assistance.  See Strickland v. Washington, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  Id. at 687.  First, Petitioner must "show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  "[C]ounsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"  Cullen v. Pinholster, 131 S.Ct. 1388,

28

1403 (2011) (citing Strickland, 466 U.S. at 690).  "To overcome

that presumption, a defendant must show that counsel failed to

act 'reasonabl[y] considering all the circumstances.'"  Id.

(citing Strickland, 466 U.S. at 688).

A "convicted defendant making a claim of ineffective

assistance must identify the acts or omissions of counsel that are

alleged not to have been the result of reasonable professional

judgment." Strickland, 466 U.S. at 690.  The court must then

determine whether, in light of all the circumstances at the time,

the identified errors were so serious that they were outside the

wide range of professionally competent assistance.  Id.

To satisfy the prejudice prong, Petitioner must show that

"there is a reasonable probability that, absent the errors, the

factfinder would have had a reasonable doubt respecting guilt."

Id. at 695.  "It is not enough 'to show that the errors had some

conceivable effect on the outcome of the proceeding'...Counsel's

errors must be 'so serious as to deprive the defendant of a fair

trial, a trial whose result is reliable.'" Harrington v. Richter,

131 S.Ct. 770, 788 (2011) (citing Strickland, 466 U.S. at 687).

> In making this determination, a court hearing an
> ineffectiveness claim must consider the totality of the
> evidence before the judge or jury. Some of the factual
> findings will have been unaffected by the errors, and
> factual findings that were affected will have been
> affected in different ways. Some errors will have had a
> pervasive effect on the inferences to be drawn from the
> evidence, altering the entire evidentiary picture, and
> some will have had an isolated, trivial effect.
> Moreover, a verdict or conclusion only weakly supported
> by the record is more likely to have been affected by

29

> errors than one with overwhelming record support.
> Taking the unaffected findings as a given, and taking
> due account of the effect of the errors on the
> remaining findings, a court making the prejudice
> inquiry must ask if the defendant has met the burden of
> showing that the decision reached would reasonably
> likely have been different absent the errors.

Strickland, 466 U.S. at 695-96.

A court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

Petitioner raised the issues as to trial counsel in his PCR petition. The PCR court found that Petitioner did not raise a claim of ineffective assistance of trial counsel on direct appeal but he did raise the jury instructions issue, which is the underlying basis for his claim of ineffective assistance of counsel. (Answer, Ex. 33, Tr. PCR Hr'g 19:4-7, Docket Entry No. 19-37.) The PCR court found that Petitioner "could not avoid the preclusive effect of [N.J. Ct. R. 3:22-5] by simply cloaking arguments made and rejected in the Appellate Division as 'ineffective assistance of counsel...' [and as such] defendant's argument regarding the jury instruction is procedurally barred and therefore will not be considered." (Id. at 19-14 to 19-24.)

Petitioner's claims regarding trial counsel's failures at sentencing and to prepare were raised in his "accumulation of

30

errors" argument.  The PCR court also denied this ground,
stating: "I don't find that there were errors. I don't find that
there [are] any grounds for post conviction relief, based upon an
alleged accumulation of errors which didn't exist." (Id. at Ex.
33 (28:13-22.)

Petitioner appealed the PCR court's rulings, but the
Appellate Division affirmed, stating:

> On appeal, defendant again argues ineffective
> assistance of trial counsel, again focusing primarily
> on trial counsel's failure to object to the jury
> instruction on passion/provocation manslaughter. We
> have considered defendant's arguments in light of the
> record and applicable law. We conclude that the
> arguments are without sufficient merit to warrant
> discussion in a written opinion. R. 2:11-3(e)(1)(E). We
> affirm substantially for the reasons expressed by Judge
> Kreizman in his thorough and well-reasoned oral opinion
> rendered November 13, 2008.

State v. Simms, 2010 WL 1929780, at * 2 (N.J. App. Div. May 14,
2010.)

The Court finds that the decision of the state court as to
Petitioner's ineffective assistance of trial counsel claims was
neither contrary to, nor an unreasonable application of, clearly
established federal law, nor was it based on an unreasonable
determination of the facts in light of the evidence presented.
The state court found that the underlying claims for Petitioner's
ineffectiveness claims, jury instructions and sentencing, were
without merit.  Therefore, it was reasonable for trial counsel
not to raise said arguments.  Petitioner has not met his burden
and as such, his petition will be denied on these grounds.

31

In Grounds Seven and Eight, Petitioner alleges that he
suffered ineffective assistance of appellate counsel because
appellate counsel: (1) "failed to argue that the jury wasn't
guided by curative effort of the court in erroneous jury
instruction claim;" (2) "failed to raise issue that court's
denial of jury's request to unrestrict deliberations of passion
was prejudicial to defendant;" (3) "failed to raise issue that
sentencing court impeded on the jury's findings where convictions
of attempted passion/provocation manslaughter were not honored in
consecutive sentence;" (4) "neglected to present existing proof
showing the jury was not guided by curative effort of the court,
regarding the manner in which to deliberate offenses containing
questions of passion, on issue of erroneous jury instruction;"
(5) "neglected to raise issue that defendant was prejudiced by
the court restricting simultaneous jury deliberations of multiple
counts containing questions of passion;" (6) "failed to raise
issue that defendant was prejudiced by fashion of sentencing
court's consecutive sentence;" (7) "failed to raise issue that
deliberating process precluded the jury's consideration of
evidence that various victims were connected to the provocation
found to have impassioned the defendant;" (8) "failed to file
defendant's motion for reconsideration of appeal, where motion
contained claims that elements of pro se issue remained
unadjudicated as errors argued therein existed outside the scope

of the court's curative effort;" and (9) "failed to raise issue of ineffective assistance of trial counsel on direct appeal."

The Fourteenth Amendment guarantees a criminal defendant pursuing a first appeal as of right certain "minimum safeguards necessary to make that appeal 'adequate and effective,'" Evitts v. Lucey, 469 U.S. 387, 392 (1985) (quoting Griffin v. Illinois, 351 U.S. 12, 20 (1956)), including the right to the effective assistance of counsel. Evitts, 469 U.S. at 396. The Strickland ineffective assistance of counsel standard applies to a claim that appellate counsel was ineffective. See Smith v. Robbins, 528 U.S. 259, 285 (2000); United States v. Cross, 308 F.3d 308, 315 (3d Cir. 2002). Defense counsel has a constitutionally imposed duty to consult with a defendant about whether to appeal when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000). The term "'consult' convey[s] a specific meaning-advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Id. at 478.

Petitioner raised his claim of ineffective assistance of appellate counsel before the PCR court in a pro se brief, arguing

33

that appellate counsel failed to: (1) raise a due process argument regarding improper jury instructions to deliberate Counts One through Four concerning passion/provocation in a sequential manner; (2) clarify the distinction between the arguments raised in Petitioner's pro se appellate brief; and (3) move for reconsideration of the Appellate Division's opinion on the basis of Petitioner's pro se appellate arguments.  (Answer, Ex. 34, Pet'r's Pro Se Br. Da73-80.)  PCR counsel raised the following issues in his brief: (1) "counsel failed to meet with the defendant at all prior to the Appellate Division rendering an opinion;" (2) "counsel did not argue the merits of defendant's pro se brief;" (3) "counsel refused to file for reconsideration of the appeal;" and (4) "counsel failed to raise the issue that the trial court erred in instructing the jury to view each victim as a separate crime as opposed to permitting the jury to deliberate the actions as one event with a passion/provocation defense as the defendant believes the legislature intended."

The PCR court denied the petition on these grounds, stating:

Defendant also claims that he was denied effective assistance of appellate counsel.  He says that appellate counsel failed to meet with him and to present the issues argued by Mr. Simms in his pro se appellate brief to the Appellate Division.

First, it must be noted that the arguments found in defendant's pro se appellate brief were specifically reviewed by the Appellate Division and each one was rejected.  And I find that such arguments are procedurally barred.

Whether counsel argued those claims before the Appellate Division really is irrelevant since they were

34

> reviewed and rejected on direct appeal by our Appellate
> Division.  I find defendant has failed to establish a
> prima facie case of ineffective assistance with regard
> to appellate counsel...

(Answer, Ex. 33, Tr. PCR Hr'g 26:3-18.)  As stated above, the
Appellate Division affirmed for substantially the reasons
expressed by Judge Kreizman.  Simms, 2010 WL 1929780, at *2.

As stated above as to the trial counsel claims, the state
court found that the underlying claims for Petitioner's
ineffectiveness claims, jury instructions and sentencing, were
without merit.  Therefore, it was reasonable for counsel not to
raise said arguments at trial or on appeal.  Further, as to his
arguments raised on pro se appellate grounds, the Appellate
Division acknowledged that Petitioner had filed a pro se brief in
support of his direct appeal (Answer, Ex. 31, Opinion of
Appellate Division Da55), and also specifically stated that "[t]o
the extent we have not discussed any additional arguments
presented by defendant, we find them to be without merit to
warrant discussion in this opinion." (Answer, Ex. 31, Opinion of
Appellate Division Da72.)  The Court finds that the decision of
the state court as to these ineffective assistance of appellate
counsel claims was neither contrary to, nor an unreasonable
application of, clearly established federal law, nor was it based
on an unreasonable determination of the facts in light of the
evidence presented.  Petitioner has not met his burden and as
such, his petition will be denied on these grounds.

As to the claims that Petitioner does not appear to have raised before the state courts, the Court finds said claims to be meritless.  Specifically, Petitioner's claims that appellate counsel (1) "neglected to present existing proof showing the jury was not guided by curative effort of the court, regarding the manner in which to deliberate offenses containing questions of passion, on issue of erroneous jury instruction", and (2) "failed to raise issue of ineffective assistance of trial counsel on direct appeal", do not appear to have been raised directly with the state courts.

Petitioner appears to be referring to the verdict sheet when he states that appellate counsel neglected to present "existing proof" to show that the jury was not guided by the curative instructions.  But appellate counsel attached the final verdict sheet to the brief he submitted on direct appeal as well as arguing in his brief that the "erroneous instructions and the sequential nature of the verdict sheet combined to preclude and/or inhibit proper consideration of passion/provocation manslaughter as a lesser-included offense of first degree attempted murder...in violation of Mr. Simms' Fourteenth Amendment due process and fair trial rights."  (Answer, Ex. 14, Pet'r's App. Br. 27-41; Da 14-27.)  As such, Petitioner's arguments that appellate counsel failed to present the verdict sheet and its implications to the court are without merit.  Petitioner has

failed to show that appellate counsel's representation fell below an objective standard of reasonableness in this regard and he has also failed to show prejudice.  Therefore, the petition will be denied on this ground.

Petitioner argues that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on direct appeal.  As discussed above, the underlying basis for this claim, the ineffectiveness of trial counsel, was reviewed and denied by the state courts.  Further, as also stated above, this Court does not find that decision to be either "contrary to," or an "unreasonable application" of, established Supreme Court precedent.  Therefore, the Court finds that Petitioner has failed to show that counsel's representation fell below an objective standard of reasonableness.  Further, in light of the state court's holdings regarding the jury instructions and sentencing issues, as well as with regard to trial counsel's performance, Petitioner cannot show any prejudice as a result of appellate counsel's failure to raise this argument on appeal.  Therefore, Petitioner is not entitled to habeas relief on this claim.

### 4.  Cumulative Errors Claim

In Ground Seven, Petitioner argues that he was "prejudiced by accumulation of errors collectively impacting jury deliberations and the outcome of trial, impeding on defendant's Rights to Due Process and Trial by Jury."

The test for a "cumulative error" claim is whether the overall deficiencies "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  See Hein v. Sullivan, 601 F.3d 897, 917 (9th Cir. 2010) (relying on Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)); Thornburg v. Mullin, 422 F.3d 1113, 1137 (10th Cir. 2005) (relying on Donnelly); see also Fahy v. Horn, 516 F.3d 169, 205 (3d Cir. 2008) ("Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish 'actual prejudice'").

Petitioner raised his cumulative error claim in his state PCR proceedings.  (Answer, Ex. 31, Pet'r's PCR Br. 43-52.)  The PCR court concluded that this claim was meritless, stating that "I don't find that there were errors. I don't find that there [are] any grounds for post conviction relief, based upon an alleged accumulation of errors which didn't exist."  (Answer, Ex. 33, Tr. PCR Hr'g 28:13-28:22.)

Petitioner does not make any assertions suggesting actual prejudice, and this Court, after carefully examining the extensive underlying record, cannot find any aspect of Petitioner's criminal proceedings suggesting, singularly or cumulatively, anything more than a hypothetical possibility of prejudice.  Correspondingly, Petitioner's Ground Seven challenges do not merit habeas relief, since the state court's dismissal of

Petitioner's cumulative error argument was not an unreasonable application of Supreme Court precedent.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Jurists of reason here would not disagree with this Court's finding that Petitioner has failed to make a substantial showing of the denial of a constitutional right.  No certificate of appealability shall issue.

## IV.  CONCLUSION

The Petition will be denied.  The Court will issue an appropriate order and judgment.

                                    s/ Mary L. Cooper
                                **MARY L. COOPER**
                                United States District Judge

Dated:  March 16, 2012

                                    39